UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SAMER BISHAY,

    Plaintiff,

  v.

ICON AIRCRAFT, INC.,

    Defendant.

Case No. 2:19-cv-00178-KJM-AC

ORDER

Plaintiff alleges he entered into a contract and paid a $100,000 down payment to purchase a limited edition aircraft from defendant, but defendant now refuses to honor the parties' agreement. Defendant moves to dismiss plaintiff's complaint. As explained below, the court GRANTS the motion.

I.    BACKGROUND

Plaintiff Samer Bishay is a Canadian citizen. Compl., ECF No. 1, ¶ 2. Defendant ICON Aircraft, Inc. is a Delaware corporation with its headquarters and principal place of business in Vacaville, California. *Id.* ¶ 3. ICON manufacturers an experimental light-sport aircraft: the ICON A5. *Id.* ¶ 5. The A5 is a two-seat, light-sport aircraft designed to take off from and land on water. *Id.* ¶ 6. The A5 is the only product ICON manufactures and no other manufacturer makes a similar aircraft. *Id.* ¶¶ 6, 7.

On February 14, 2011, plaintiff executed an ICON A5 Limited Edition Aircraft Deposit Agreement, under which plaintiff agreed to pay a $100,000 deposit to ICON to purchase

1

one of the first 100 limited edition A5s ICON would manufacture. *Id.* ¶ 8; Deposit Agreement, Compl. Ex. A, ECF No. 1-1. Under the deposit agreement, plaintiff would pay a total price of "$135,000 Fixed" for his limited edition A5. Compl. ¶ 8. ICON countersigned the deposit agreement on February 23, 2011, and plaintiff wired his $100,000 deposit to ICON's business operations account. *Id.* ¶ 10. Plaintiff was then assigned "purchase slot number 92." *Id.* Plaintiff alleges on information and belief that "ICON solicited at least $10,000,000 in deposits from at least 100 potential purchasers (including Plaintiff), which money was deposited directly into its operating account and used as 'seed money' for business development." *Id.* ¶ 12.

Under the deposit agreement, plaintiff agreed to pre-purchase a limited edition "Founder's edition A5," which would include "a specialized color scheme, unique badges and 'fully-loaded' capabilities." *Id.* ¶ 9. Under the parties' agreement, ICON would send plaintiff a purchase agreement when it began manufacturing his plane, which would require plaintiff to then make certain selections for his limited edition A5 and also pay the remaining purchase price. *Id.*

ICON promised plaintiff and other purchasers of the first 100 Founder's Edition A5s that their aircrafts would be manufactured and delivered in 2011. *Id.* ¶ 11; *but see* Deposit Agreement § 2.2 ("ICON expects deliveries of the Aircraft to begin in 2011. Actual production and delivery dates may vary. The scheduled date of delivery for the Aircraft ("Delivery Date") shall be determined by ICON."). Plaintiff's A5 was not manufactured or delivered in 2011. Compl. ¶ 13.

In 2015, though it still had not delivered plaintiff's or any other purchaser's aircraft, ICON contacted plaintiff to address "various revisions [ICON] wanted to make to [plaintiff's] deposit agreement, including (most importantly) an increase in the price of the aircraft." *Id.* ¶ 14. On December 28, 2015, plaintiff and ICON executed the "ICON A5 Founder's Edition Amended and Restated Aircraft Deposit Agreement." *Id.* ¶ 15; Amended Agreement, Compl., Ex. B, ECF No. 1-2, at 2 ("As a result of changes to ICON's aircraft design over time, including the expected incorporation into the base ICON A5 model of items previously understood to be options, ICON and Buyer desire to enter into this Deposit Agreement."). Under the amended agreement, its terms would supersede and replace the original deposit agreement. Compl. ¶ 16; Amended Agreement

at 2. The amended agreement did not require plaintiff to submit a further deposit, but instead applied his $100,000 deposit under the original deposit agreement to the amended agreement. Compl. ¶ 17. The amended agreement also "purportedly" increased plaintiff's purchase price to "$220,000 Fixed." *Id.* ¶ 18. Plaintiff retained purchase position 92 of the first 100 aircraft produced. *Id.* He alleges on information and belief that all other deposit holders also executed new amended agreements substantively similar to the amended agreement plaintiff signed. *Id.* ¶ 21.

Both the deposit agreement and amended agreement barred the parties from unilaterally cancelling the contract, instead providing the contract "remained in force until ICON sent Plaintiff a 'Production Notice' indicating that his aircraft in purchase position 92 was about to commence manufacture." *Id.* ¶ 22. Upon plaintiff's receipt of a production notice, he would have 21 days to cancel the contract and receive a full refund of his deposit or execute a purchase agreement. *Id.* ¶ 23. The purchase agreement would incorporate the terms of the deposit agreement and provide for payment of the remaining purchase price. *Id.*

ICON never sent plaintiff a production notice. *Id.* ¶ 24. Relying on the deposit and amended agreement, however, plaintiff made arrangements for the eventual delivery of his aircraft, "including arranging for a United States registration number for the aircraft with the Federal Aviation Administration." *Id.* ¶ 25.

Plaintiff alleges on information and belief that ICON experienced manufacturing delays in 2016 and moved its headquarters and facility to Vacaville, California. *Id.* ¶ 26. On May 26, 2016, ICON's CEO, Kirk Hawkins, emailed plaintiff, "inform[ing] him that customer deliveries would be shifted again by another year." *Id.* ¶ 26. On October 30, 2017, ICON emailed plaintiff, explaining ICON was increasing the purchase price again and plaintiff had "forfeited" his purchase position. *Id.* ¶ 27. Despite plaintiff informing ICON he was able and willing to pay the remaining purchase price of the aircraft, including the amount called for in the amended agreement, on an unspecified date, "ICON informed Plaintiff that it could no longer honor either the [deposit agreement] or the [amended agreement], and that the purchase price for the A5 aircraft was being increased to at least $352,000 for all customers." *Id.* ¶ 29. ICON informed plaintiff he could retain his purchase position only if he entered into a new deposit agreement and

agreed to pay the new $352,000 price. *Id.* ¶ 30. ICON stated it would refund plaintiff's deposit and cancel his contract if he did not agree to the new purchase price. *Id.* ¶ 30. Plaintiff rejected this offer and demanded in writing that ICON honor his contract without increasing the purchase price. *Id.* ¶ 31. ICON refused. *Id.*

On January 28, 2019, plaintiff sued ICON, alleging breach of contract and seeking specific performance, violation of the California Consumer Legal Remedies Act ("CLRA"), California Civil Code section 1770, and unfair business practices ("UCL") under California Business & Professions Code section 17200. *Id.* ¶¶ 32−53. ICON moves to dismiss the complaint, Mot., ECF No. 11, plaintiff opposes, Opp'n, ECF No. 13, and ICON filed a reply, Reply, ECF No. 15. The court submitted the motion after hearing and resolves it here.

II. <u>LEGAL STANDARD</u>

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93−94 (2007). This rule does not apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986) *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001). A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

III. DISCUSSION

ICON moves to dismiss plaintiff's complaint, arguing plaintiff has not suffered an injury-in-fact and therefore lacks standing to sue, has not sufficiently alleged ICON's breach of contract, cannot obtain specific performance under the contract and has not sufficiently alleged CLRA or UCL claims. The court addresses these arguments as necessary below.

A. Standing

Article III requires that a plaintiff "show (1) she has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Bernhardt v. Cty. of L.A.*, 279 F.3d 862, 868–69 (9th Cir. 2002) (citation omitted).

Framing plaintiff's alleged injury as ICON's alleged failure to "honor the price in the [deposit agreement] or the [amended agreement]," ICON argues plaintiff has not suffered an injury-in-fact. Mot. a 9. This argument turns on ICON's reading of the amended agreement, which, according to ICON, "permit[s] ICON to change the purchase price of the aircraft based on the final

5

aircraft specifications and features" and thus allowed ICON to change the price at will without injuring plaintiff. Mot. at 9.[1]

Plaintiff contends that ICON's argument "the Contract was always subject to price increases . . . disingenuously neglects to mention the agreement only references a potential increase for any optional features Plaintiff might choose." Opp'n at 2 (emphasis omitted), 4−5. The deposit agreement and amended agreement's language is not entirely clear on this point and, at the very least, is susceptible to plaintiff's interpretation. *See* Deposit Agreement § 5.1 ("The purchase price listed herein is the fixed sales price for the base ICON A5 LE. The final price of the Aircraft ("Purchase Price") may differ from the price herein, depending on optional features selected in the Aircraft Purchase Agreement."); Amended Agreement § 1.1 ("The Purchase Price is the fixed sales price for the Founders Edition Aircraft as configured. The final price of the Aircraft ('Final Purchase Price') may differ from the price herein, depending on additional options, accessories, or features if available and selected in the Aircraft Purchase Agreement."); *see also id.* Ex. A, § 3.a (noting the Aircraft Purchase Agreement would permit plaintiff to "select any optional equipment or services for the Aircraft . . . ."). Further, although not expressly addressed by either party, it is unclear to the court why ICON and plaintiff entered into an amended agreement "[a]s a result of changes to ICON's aircraft design over time, including the expected incorporation into the base ICON A5 model of items previously understood to be options," Amended Agreement at 2, if ICON was, as it argues here, entitled to change the aircraft's base price by changing its base specifications.

"Whether language in a contract is ambiguous is a question of law." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1224 (9th Cir. 2015) (quoting *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal. 3d 903 (Cal. 1986)). "If the [] agreement is ambiguous, then interpretation of the agreement presents a fact issue that cannot be resolved on a motion to dismiss." *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1008–09 (9th Cir. 2014); *Requa v. Regents of Univ. of California*, 213 Cal. App. 4th 213, 224 (2012) (quoting *Marina Tenants Assn.*

---

[1] All citations to the parties' briefs refer to CM/ECF pagination, not the briefs' internal pagination.

*v. Deauville Marina Development Co.*, 181 Cal. App. 3d 122, 128 (1986) ("[W]e must accept the plaintiffs' or petitioners' allegations regarding the construction of an ambiguous contract, '[s]o long as the pleading does not place a clearly erroneous construction upon the provisions of the contract[.]'") (alterations in original).

Here, the language is ambiguous and, construed in plaintiff's favor, supports plaintiff's allegation he was injured by ICON "refusing to sell an A5 aircraft to Plaintiff for the agreed-upon price," which, under plaintiff's reading, includes the base price plus any options, accessories or features he selects. *See* Compl. ¶¶ 9, 37.

On the issue of standing, the motion is DENIED.

B. <u>Breach of Contract</u>

ICON argues plaintiff cannot seek specific performance in light of the agreements' limitation of liability provision,[2] under which:

> NOTWITHSTANDING ANYTHING TO THE CONTRARY, THE MAXIMUM LIABILITY ICON SHALL HAVE TO BUYER FOR ANY BREACH OF THIS DEPOSIT AGREEMENT OR OTHERWISE ARISING OUT OF OR RELATING TO THIS DEPOSIT AGREEMENT SHALL BE A FULL REFUND OF THE DEPOSIT MADE BY BUYER. IN NO EVENT SHALL ICON BE LIABLE FOR CONSEQUENTIAL, INDIRECT, PUNITIVE, INCIDENTAL OR SPECIAL DAMAGES WHATSOEVER ARISING OUT OF OR RELATING TO THIS DEPOSIT AGREEMENT.

Deposit Agreement § 7; Amended Agreement Ex. A § 7; *see* Mot. at 9, 10 n.1.

Plaintiff argues, without meaningful analysis, that this provision is either invalid or unenforceable because it is unconscionable or affects a public interest. Opp'n at 8 (citing,

---

[2] ICON principally raises this argument as an issue of standing. *See* Mot. at 9. Nonetheless, ICON provides no authority for its position that a limitation of liability provision implicates a party's standing. Moreover, "a provision in any contract . . . that purports to waive, in all fora, the statutory right to seek public injunctive relief under the UCL, the CLRA, or the false advertising law is invalid and unenforceable under California law." *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 963 (2017). At hearing, ICON argued that the court in *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 128 (2015), dismissed UCL and CLRA claims in light of a limitation of liability clause, but that decision addressed only a breach of contract claim. Accordingly, on this record, the court finds the limitation of liability clause does not affect plaintiff's CLRA and UCL claims insofar as they seek injunctive relief on behalf of the public. The court therefore addresses the limitation of liability clause only as to plaintiff's breach of contract claim.

7

without explanation as to their application here, *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994), *Rideau v. Stewart Title of California, Inc.*, 235 Cal. App. 4th 1286, 1295 (2015), *Markborough California, Inc. v. Superior Court*, 227 Cal. App. 3d 705, 714–15 (1991)). Plaintiff contends that enforcing this provision would constitute "a drastic departure from the reasonable expectations of the parties at the time of contracting . . . . allow[ing] [ICON] to take and use Plaintiff's money for a period of eight years, then completely repudiate the Contract with Plaintiff after it had made enough money to pay back his deposit." *Id.*; *see also* Amended Agreement § 1.2 (allowing ICON to use deposit as "a source of working capital . . . [to] be used for company operations"). Plaintiff also appears to argue the limitation of liability provision should be deemed invalid or unenforceable because "[d]efendant must be put on notice" to enforce the contracting parties' expectations and serve "[p]ublic policy . . . by signaling that obtaining and using a consumer's funds based on promises made to that consumer is not a trivial matter." Opp'n at 8.

"Contractual limitations of liability have been frequently upheld." 1 Witkin, Summary 11th Contracts § 697 (2019) (collecting cases). "With respect to claims for breach of contract, limitation of liability clauses are enforceable unless they are unconscionable, that is, the improper result of unequal bargaining power or contrary to public policy." *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1126 (2012) (addressing summary judgment) (citing *Markborough*, 227 Cal. App. 3d at 714); *see also Lewis*, 244 Cal. App. 4th at 127 (applying same principle on demurrer).

Plaintiff has not alleged unconscionability or a public policy exception here, warranting dismissal of his breach of contract claim. *See Fuhu, Inc. v. Toys "R" US, Inc.*, No. 12CV2308-WQH-WVG, 2013 WL 12097569, at *7 (S.D. Cal. Mar. 1, 2013) (granting motion to dismiss where complaint did not allege limitation of liability provision was unconscionable or contrary to public policy); *see also Crippen v. Cent. Valley RV Outlet, Inc.*, 124 Cal. App. 4th 1159, 1165 (2004) (party challenging contract term has the burden to prove unconscionability). Plaintiff's briefing does not clarify his argument. It is unclear how the court's refusing to enforce the provision would serve the parties' expectations, as plaintiff argues here, where the parties

8

expressly agreed to this limitation of liability clause twice. Moreover, while plaintiff's briefing could be read to suggest the provision is invalid because defendant acted in bad faith, plaintiff's basis for this argument is unclear.[3] *See, e.g., Food Safety*, 209 Cal. App. 4th at 1127 (citation omitted) (discussing limitation of liability clauses and bad faith claims).

The court cannot conclude at this stage that the provision is enforceable here, only that plaintiff impermissibly declined to acknowledge it in his complaint. Accordingly, the motion is GRANTED as to plaintiff's breach of contract claim, and plaintiff is granted leave to amend.

C. <u>Consumer Legal Remedies Act & Unfair Competition Law Claims</u>

Plaintiff alleges ICON violated CLRA sections 1770(a)(9), (14) and (17)[4] by advertising the A5 at a fixed price, securing, retaining and using his deposit, then twice increasing the price of the A5 and now refusing to sell plaintiff the A5 at either of the agreed upon prices. FAC ¶¶ 39−48. Relying on substantively similar claims concerning ICON's advertisements and later repudiation, plaintiff alleges ICON engaged in "unlawful, fraudulent, unfair, false and misleading business acts and practices" in violation of California's unfair competition law. *Id.* ¶¶ 49−53.

To state a claim under the CLRA, a plaintiff must sufficiently allege: "(1) a consumer is exposed to an unlawful business practice, and (2) the consumer is damaged by the unlawful practice. Additionally, a CLRA claim based on fraud requires reliance." *Richter v. CC-Palo Alto, Inc.*, 176 F. Supp. 3d 877, 899 (N.D. Cal. 2016) (internal citation omitted). To state a UCL claim, "a plaintiff must show either an (1) 'unlawful, unfair, or fraudulent business act or practice,' or (2) 'unfair, deceptive, untrue, or misleading advertising.'" *Lippitt v. Raymond James Fin. Servs. Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003) (quoting Cal. Bus. & Prof. Code § 17200).

---

[3] In any event, plaintiff disclaimed a bad faith argument at hearing on this motion, explaining he required discovery to sufficiently allege ICON's bad faith.

[4] These CLRA provisions prohibit: "Advertising goods or services with intent not to sell them as advertised"; "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law"; and "Representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction." Cal. Civ. Code § 1770(a)(9), (14) & (17).

"Because the UCL is written in the disjunctive, it establishes three varieties of unfair competition- acts or practices which are unlawful, or unfair, or fraudulent." *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1243 (N.D. Cal. 2017) (citation and internal quotation marks omitted). Further, to the extent a CLRA or UCL claim is grounded in fraud, it must satisfy Rule 9(b)'s heightened pleading standard. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires a plaintiff to allege the "who, what, when, where, and how" of the allegedly fraudulent conduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

ICON argues plaintiff must, but has not, satisfied Rule 9(b) in alleging his CLRA and UCL claims. Mot. at 13−14, 16−17. At hearing, plaintiff clarified he is not pursuing either claim under a fraud theory, but instead grounds his claims in ICON's alleged deception and unfairness. Despite plaintiff's claims he is not pursuing a fraud theory, his complaint suggests otherwise. *See* Compl. ¶¶ 41−42 (alleging ICON advertised the A5 but "did not intend to sell the A5 aircraft for only $135,000 as advertised, and did not intend to supply sufficient [sic] number of aircraft to sell an A5 at that price"); *see also Meridian Project Sys. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1219 (E.D. Cal. 2005) ("It is well-settled in the Ninth Circuit that misrepresentation claims are a species of fraud, which must meet Rule 9(b)'s particularity requirement."). In any event, plaintiff never alleges when or where he viewed the advertisement that allegedly prompted him to enter into this contract, nor does he describe the content of the advertisement. *See* Compl. ¶ 41. Similarly, plaintiff alleges ICON has refused to sell him an A5 at the agreed upon price without alleging when ICON issued this refusal. *See id.* ¶¶ 29, 45, 50. Further, plaintiff's UCL claim relies on similar allegations concerning an unspecified advertisement plaintiff allegedly relied on, accompanied by conclusory allegations ICON engaged in "unlawful, fraudulent, unfair, false and misleading business acts and practices." *See id.* ¶¶ 50, 54. These allegations do not provide ICON or the court with notice as to which prong or prongs plaintiff intends to pursue. While plaintiff clarified at hearing he intends to proceed under the unfair prong, he should clearly allege as much and support his claim with facts.

/////

/////

Satisfying the CLRA and UCL pleading standards, even where pleading is subject to Rule 9(b), is not particularly onerous. *See Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 566 (9th Cir. 2017). Nonetheless, more clarity is required than plaintiff has provided here.

IV. <u>CONCLUSION</u>

The motion to dismiss is GRANTED. Plaintiff may file an amended complaint within 14 days of this order.

IT IS SO ORDERED.

DATED: July 24, 2019.

_____
UNITED STATES DISTRICT JUDGE