UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SAMER BISHAY,

Plaintiff,

v.

ICON AIRCRAFT, INC.,

Defendant.

No. 2:19-cv-00178-KJM-AC

ORDER

Plaintiff alleges he entered into a contract to purchase a limited edition aircraft from defendant, but defendant has refused to honor the parties' agreement. Defendant now moves to dismiss plaintiff's first amended complaint. As explained below, the court GRANTS the motion.

I. BACKGROUND

The court set forth the relevant facts in its order on the defendant's first motion to dismiss and incorporates them by reference here. Order, ECF No. 18.

In that order, the court dismissed plaintiff's breach of contract claim for failure to allege facts showing the unenforceability of the limitation of liability clause in either of the parties' two agreements. Order at 8. The court dismissed the CLRA and UCL claims for failure to plead facts supporting fraud claims with particularity as required by Federal Rule of Civil Procedure 9(b). *Id.* at 11. At hearing on the first motion, plaintiff indicated he intended to pursue the CLRA and UCL claims under a theory of unfairness and deceit instead of fraud. *Id.* at 10. In its order on the

first motion to dismiss, the court explained that a first amended complaint should clearly allege as much and include supporting facts. *Id.* at 10.

In his first amended complaint ("FAC"), plaintiff has alleged the limitation of liability provision in the agreements is unenforceable in that "it falls dramatically outside the reasonable expectations of the parties at the time they entered into the agreement and its application here," and is therefore unconscionable. FAC ¶ 43. He also alleges the limitation of liability provision is contrary to public policy "as it attempts to relieve ICON of all liability, including for intentional conduct." *Id.* Plaintiff further claims he was not represented by counsel at the signing of either the first or second deposit agreement, and "there was no opportunity to negotiate the terms" of either agreement. *Id.* ¶¶ 10, 20.

Plaintiff further alleges he read articles in a magazine and on the internet that "reflected representations made by ICON about the A5 aircraft, including the Founder's Edition model." *Id.* ¶ 8, Ex. A. Attached as Exhibit A to the first amended complaint are two articles about the ICON A5 from the websites Graphic News and New Atlas. *Id.* Plaintiff does not allege either website was controlled or directed by ICON in the making or publishing of representations about the A5 in those articles. Rather, plaintiff alleges that ICON "informed the public that it was developing and manufacturing the A5 aircraft, and that the plane was being offered for $135,000. It also spread the news about its Founders Edition program, allowing those willing to make an early deposit of $100,000 the opportunity to secure one of the first 100 limited edition A5 aircraft." *Id.* ¶ 47. Plaintiff alleges that "ICON individually communicated the same information to Plaintiff, encouraging him to become one of the Founders Edition investors so he could receive a unique A5 aircraft at the 'fixed' price of $135,000." *Id.* ¶ 48. Supporting his claim for a violation of California Business & Professions Code section 17200,[1] plaintiff alleges, "ICON released information to the public to induce early investors to make down-payments toward one of the first 100 limited edition A5 aircraft when manufactured. ICON either intentionally mislead [sic] investors or carelessly

---

[1] California Business and Professions Code section 17200 *et seq.*, also known as the Unfair Competition Law ("UCL"), allows courts to enjoin "unfair competition" defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

2

disregarded the reliance these investors placed on its' representations about the aircraft and the advertised price[.]" *Id.* ¶ 58.

## II. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001). A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th

Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

III. DISCUSSION

    A. Breach of Contract

As the court discussed in its first order, "contractual limitation of liability clauses are enforceable unless they are unconscionable, that is, the improper result of unequal bargaining power or contrary to public policy." *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1126 (2012); s*ee also* 1 Witkin, Summary 11th Contracts § 697 (2019) (collecting cases).

Unconscionability is comprised of two elements, procedural unconscionability and substantive unconscionability. *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1243 (2016), citing *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1133 (2013) (*Sonic II*). As the California Supreme Court has explained:

> The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability. Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves. In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.

*Armendariz v. Foundation Healthy Psychcare Services, Inc.*, 24 Cal. 4th 83, 114 (2000) (internal quotation marks and citations omitted; emphasis in original).

Courts find procedural unconscionability when the process of contract formation includes oppression or surprise due to unequal bargaining power between the parties. *Id.*; *Sonic II,* 62 Cal. 4th at 1243. "The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject

4

it." *Little v. Auto Stiegler, Inc.* 29 Cal. 4th 1064, 1071 (2003) (internal quotation marks and citation omitted).

Substantive unconscionability has been characterized, variously, as substantive contract terms that are "overly harsh," *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1532 (1997), "unduly oppressive," *Perdue v. Crocker Nat'l Bank*, 38 Cal. 3d 913, 925 (1985), and "so one-sided as to shock the conscience," *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, 55 Cal. 4th 1064, 1071 (2003). These non-exclusive standards express the notion that unconscionability "requires a substantial degree of unfairness *beyond 'a simple old-fashioned bad bargain.'*" *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899 (2015) (emphasis in original) (citing *Sonic II*, 62 Cal. 4th at 1160).

Here, plaintiff has amended his complaint to allege that, because the limitation on liability clause "falls dramatically outside the reasonable expectations of the parties at the time they entered into the agreement," it is unconscionable. FAC ¶ 43. He further alleges the limitation on liability clause "runs contrary to public policy, as it attempts to relieve ICON of all liability, including for intentional conduct." *Id.* ¶ 43. In support of these conclusions plaintiff alleges he was not represented by counsel in negotiating both agreements and there was no opportunity to negotiate the terms. *Id.* ¶¶ 10, 20.

These factual allegations are insufficient to make out a plausible case for the unconscionability of the limitation on liability clause. Although plaintiff states there was no opportunity to negotiate the terms of the agreement, he does not describe any of the circumstances under which the contract was signed or negotiated. He states he was not represented by counsel, but this alone does not demonstrate the kind of unequal bargaining power required to show oppression. *See West v. Henderson*, 227 Cal. App. 3d 1578, 1586 (1991), *overruled on other grounds by Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Assn.*, 55 Cal. 4th 1169 (2013). Plaintiff does not allege defendant coerced him into signing the agreement without the presence of counsel. Nor does he allege any facts showing procedural unconscionability in the form of surprise, which is often characterized by the supposedly agreed-upon term being hidden in a prolix printed form. *OTO, LLC. v. Kho*, 8 Cal.5th 111, 126 (2019).

Lastly, the facts plaintiff alleges would not show the provision at issue is so severely unfair as to be substantively unconscionable. "Not all one-sided contract provisions are unconscionable; hence the various intensifiers in our formulations: '*overly* harsh,' '*unduly* oppressive,' '*unreasonably* favorable.'" *Sanchez,* 61 Cal. 4th at 911 (emphasis in original) (citation omitted). It is not clear how the provision "falls dramatically outside the reasonable expectations of the parties," as plaintiff alleges in the amended complaint, because plaintiff has not pled facts explaining the expectations of the parties in the event of a breach. Nor do any facts support plaintiff's conclusory statement that the limitation of liability clause "runs contrary to public policy, as it attempts to relieve ICON of all liability, including for intentional conduct." *Id.* ¶ 43. The clause, by its terms, allows plaintiff to hold ICON liable for a refund of the $100,000 deposit and is limited to disputes arising out of the agreement itself. Plaintiff alleges no facts to support a different reading.

Plaintiff has not sufficiently pled a case for the unenforceability of the limitation on liability clause. The court cannot grant the relief requested in the first amended complaint without finding the clause unenforceable; the relief available on the facts as pled is the return of plaintiff's deposit. FAC Exs. B & C, § 7. Thus, the motion is GRANTED as to plaintiff's breach of contract claim. Plaintiff's breach of contract claim is DISMISSED, with leave to amend once more, if he can do so while complying fully with Federal Rule of Civil Procedure 11. *See Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (noting preference for granting leave to amend when defects appear curable).

B. <u>Consumer Legal Remedies Act & Unfair Competition Law Claims</u>

Plaintiff also alleges ICON violated the Consumer Legal Remedies Act, California Civil Code sections 1770(a)(9), (14), and (17)[2] by: advertising the A5 at a fixed price; securing,

---

[2] California Civil Code § 1770(a) makes unlawful the following "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer[…]

    (9) Advertising goods or services with intent not to sell them as advertised.[…]
    (14) Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law. […]

retaining and using his deposit; twice increasing the price of the A5; and now, refusing to sell plaintiff the A5 at either of the agreed upon prices. FAC ¶¶ 45–56. The same events give rise to plaintiff's allegation that ICON engaged in "unlawful, fraudulent, unfair, false and misleading business acts and practices," violating California's unfair competition law. *Id.* ¶¶ 58–59.

         i.      Unfairness Theory

Plaintiff indicated at hearing on the first motion to dismiss that his UCL and CLRA claims are based on a theory of unfairness, as opposed to fraud. California courts have characterized unfair business practices under the UCL in varied ways. For example, some California courts have characterized an unfair business practice as one that "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Candelore v. Tinder, Inc.*, 19 Cal. App. 5th 1138, 1155 (2018) (citing *Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal. App. 4th 700, 718–19 (2001)). In some California appellate courts, when a claim of an unfair act or practice is predicated on public policy, the public policy that serves as a predicate to the action must be "tethered" to specific constitutional, statutory or regulatory provisions. *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 940 (2003).

Here, plaintiff asserts ICON's business practices are against public policy, but has not identified any constitutional, statutory or regulatory provisions. His allegations are thus insufficient to allege unfairness under the *Smith* test. *See Smith,* 93 Cal. App. 4th at 718–19.

In the alternative, the test for unfairness has been characterized as a balancing test between the practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In other words, it is a weighing of the harm to the victim against the utility of the practice to the defendant. *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1268–69 (2006).

/////

---

    (17) Representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction."

Applying the balancing test to the facts as alleged here, the court has insufficient information to reach a conclusion. Plaintiff alleges his harm was the inability to consummate the deal for the A5 at the agreed-upon price, despite effectively giving ICON an interest-free loan of $100,000 for eight years. However, plaintiff also agreed that the deposit "is a source of working capital for ICON and as such the Deposit will be used for company operations." FAC, Ex. B & C (Purchase Agreements), § 5.4. Plaintiff makes no other allegations about the utility of ICON's practice to supporting a finding in his favor under the balancing test. In this way too, the amended complaint is insufficient to make out a case of unfairness.

Under either of California's tests, plaintiff's allegations do not state a UCL claim under a theory of unfairness.

    ii.  Fraud theory

Ultimately, despite his assertion at the hearing on the first motion to dismiss that he intends to proceed on an unfairness theory, plaintiff's allegations of unfair practices are grounded in false representations by ICON, and therefore sound in fraud. In cases where a plaintiff alleges a unified course of fraudulent conduct and relies entirely on it as the basis of a claim, the claim is said to be "grounded in fraud" or to "sound in fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).

In support of plaintiff's CLRA claim, he alleges all the elements of violation of law grounded in fraud: that ICON made false representations both to the public and to him personally, that it knew those representations to be false or had no reasonable basis for believing them to be true, and that ICON induced him to act in reliance on those representations to his damage. *See* FAC ¶¶ 47–50, 55. In his UCL claim, plaintiff alleges ICON's representations about the A5 to investors either intentionally or negligently misled them, then sets forth the chain of events on which his breach of contract claim is based. *See id.* ¶ 58. He then characterizes these acts as falling within the full spectrum of unlawful business practices under California Business and Professions Code § 17200 *et seq.*: "unlawful, *fraudulent*, unfair, false or misleading[.]"

Because the allegations of plaintiff's first amended complaint are grounded in fraud, *see* FAC ¶¶ 47–50, 55, those allegations are subject to Rule 9(b)'s requirement to plead the alleged

representations with particularity. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (CLRA and UCL claims grounded in fraud must satisfy Rule 9(b)'s heightened pleading standard). Rule 9(b) requires a plaintiff to allege the "who, what, when, where, and how" of the allegedly fraudulent conduct. *Vess*, 317 F.3d at 1106.

Plaintiff has not met Rule 9(b)'s heightened pleading standard. In support of his CLRA and UCL claims, plaintiff has attached to his amended complaint two articles he characterizes as "true and correct copies of articles Plaintiff read, at the time, reflecting the representations made by ICON about the A5, including the Founders Edition model." FAC ¶ 8, Ex. A. As noted above, the articles appear to come from the websites for entities called "Graphic News" and "New Atlas." *Id.*, Ex. A at 13, 15.[3] Plaintiff does not allege the websites were operating under the control or direction of defendant ICON and they appear to be operated by unrelated third parties. *Id.*, Ex. A (both websites describing ICON in third person). The sole representation purportedly attributable to ICON in the articles about the terms of a prospective bargain is in the Graphic News article, that states, "ICON's website shows that more than 450 orders have now been taken for the craft, which will cost from $135,000." *Id.* ¶ 8 & Ex. A at 13. The court has no obligation to accept this statement as true. *See Sprewell,* 266 F.3d at 288-89.

Throughout his complaint, plaintiff relies on a combination of the third-party articles and unspecified communications from ICON made directly to him to allege that ICON engaged in misrepresentation and fraud. FAC ¶¶ 8, 9, 15, 18, 47, 48, 52, 58 & Ex. A. Without specificity, he claims that "the company enticed Plaintiff to become one of the early buyer-investors in the A5 aircraft," that "ICON informed the public that it was developing and manufacturing the A5 aircraft, and that the plane was being offered for $135,000," that "ICON individually communicated this same information to Plaintiff," and that "ICON released information to the public to induce early investors to make down-payments toward one of the first 100 limited edition A5 aircraft[.]" FAC ¶¶ 9, 47, 48, 58. These statements do not adequately put ICON or the court on notice of where, when or how these allegedly fraudulent representations were made, and they are thus insufficient

---

[3] Exhibit A is part of the First Amended Complaint on the docket and page numbers refer to the pagination of the document as a whole.

9

to meet the standard of Rule 9(b).  *See Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) ("Rule 9(b) ensures that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charge so that they can defend against the charge and not just deny that they have done anything wrong.").

If plaintiff intends to pursue theories of recovery that are not based in fraud, despite the apparent gist of his current allegations, the complaint must make those other theories clear.  If plaintiff intends to pursue the theories advanced in the complaint and again in the first amended complaint, based on misleading and fraudulent representations, he must plead the details related to the communications from ICON that he says caused his injury with greater particularity.

IV. <u>CONCLUSION</u>

The motion to dismiss is GRANTED.  Plaintiff is granted leave to amend one more time and may file an amended complaint within 14 days of this order.

This order resolves ECF No. 20.

IT IS SO ORDERED.

DATED: January 15, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE

10